## LYDERS v. LUND, Consul, Etc.

District Court, N. D. California, S. D. April 12, 1929.

No. 2300K.

Sawyer & Cluff, of San Francisco, Cal., for plaintiff.

Morrison, Hohfeld, Foerster, Shuman & Clark, of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. This is a motion to dismiss a bill in equity, brought by a citizen of the United States against "Fin Lund as consul of Denmark at San Francisco" (this being the description of defendant used in the bill). The bill alleges that plaintiff has been employed by the present consul and his predecessors as attorney for the Royal Consulate of Denmark for a period of about 15 years, and that in the course of his employment he has incurred expenses and earned fees. He alleges that "the said consul of Denmark, being first thereunto duly authorized and empowered," from time to time assigned certain properties to plaintiff as security for reimbursement for sums paid out and as compensation for services to the consulate. The bill seeks an accounting, and a decree for balance due plaintiff, and for sale of the assets assigned to satisfy plaintiff's claim.

Defendant has appeared specially "as consul," and moves to dismiss the bill upon the ground "that the said suit is a suit against the consul of Denmark at San Francisco in his official capacity as such consul." The motion is predicated upon the theory that an action against a consul on account of his official acts is an action against the government which he represents, and that this affords the basis for an assertion of the immunity of the foreign sovereign from suit in our courts. The courts of the United States have, from a very early date, declined to exercise jurisdiction over actions against sovereign nations, sued without their consent. The Exchange, 7 Cranch, 116, 3 L. Ed. 287; Oliver American Trading Co. v. Government of U. S. of Mexico (C. C. A.) 5 F. (2d) 659. The refusal of the District Courts of the United States to assume jurisdiction

against a foreign nation is due to the principles of international comity and general law rather than to lack of jurisdiction over the subject-matter of the suit. Oliver American Trading Co. v. U. S. of Mexico, 264 U. S. 440, 44 S. Ct. 390, 68 L. Ed. 778. Judicial Code, § 24, subd. 1(c), 28 USCA § 41(1) (c), grants to the District Courts jurisdiction of a suit which "is between citizens of a state and foreign states, citizens, or subjects." The same statute (subdivision 18) gives jurisdiction "of all suits against consuls and vice consuls." In the absence of a claim of sovereign immunity from suit, the District Court has jurisdiction. A foreign state may waive its immunity as sovereign (The Sao Vicente [C. C. A.] 281 F. 111), or, upon proper representations, may claim such immunity from suit (Berizzi Bros. Co. v. The Pesaro, 271 U. S. 562, 46 S. Ct. 611, 70 L. Ed. 1088).

The argument of the motion before me was chiefly confined to the question as to whether this suit is or is not against the sovereign. It appears to me that the test should be similar to that used in determining whether or no a suit against a state officer is an action against a state within the meaning of the Eleventh Amendment. In such cases the suit is held to be against the state, where it is brought against the officer as representing the state's action and liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts, and is not against the state, where the liability is predicated upon acts of the officer in excess of his authority or under void authority. Pennoyer v. McConnaughy, 140 U. S. 1, 10, 11 S. Ct. 699, 35 L. Ed. 363.

█ █ Similarly, in actions against the officials of a foreign state not clothed with diplomatic immunity, it can be said that suits based upon official, authorized acts, performed within the scope of their duties on behalf of the foreign state, and for which the foreign state will have to respond directly or indirectly in the event of a judgment, are actions against the foreign state. Acts of such officials, beyond the scope of their authority or in connection with their private business, cannot be regarded as acts of the foreign state, and the official may be sued on account of any such acts.

Applying this test to the present case, it appears that this is a case where the immunity from suit of the kingdom of Denmark might be claimed, if the judgment will in fact affect the foreign sovereign. But the kingdom of Denmark is not joined as a defendant in the suit, nor has it been made clear that, as between that kingdom and the defendant consul, such transactions as those sued upon are not considered as the personal acts and liabilities of the consul in the event of suits by third parties.

█ The question then remains as to whether sovereign immunity is sufficiently claimed by the present special appearance of Fin Lund as consul of Denmark, and his motion to dismiss. The Supreme Court of the United States has had occasion to discuss the proper channels through which such a claim may be made, where the foreign state is not a party to the suit, in a series of late cases. Ex parte Muir, 254 U. S. 522, 41 S. Ct. 185, 65 L. Ed. 383; The Pesaro, 255 U. S. 216, 41 S. Ct. 308, 65 L. Ed. 592; The Sao Vicente, 260 U. S. 151, 43 S. Ct. 15, 67 L. Ed. 179; The Gul Djemal, 264 U. S. 90, 44 S. Ct. 244, 68 L. Ed. 574; Berrizzi Bros. Co. v. The Pesaro, 271 U. S. 562, 46 S. Ct. 611, 70 L. Ed. 1088. In Ex parte Muir, representations made on behalf of the British embassy, by private counsel appearing as amici curiæ to suggest the immunity of a steamship from libel as being a public vessel, were held insufficient as a claim of sovereign immunity. In The Pesaro, "suggestions" by the Italian ambassador, not appearing formally in the suit, were rejected as an insufficient basis for recognizing a similar claim. The Sao Vicente expressly holds that the consul general of Brazil was not competent to claim sovereign immunity on behalf of a seized vessel. A special appearance by the master of the Turkish ship Gul Djemal, setting up the fact that his vessel, which had been libeled, was a public vessel of Turkey, was not a valid claim of immunity. It was only in the last case, Berizzi Bros. Co. v. The Pesaro, supra, that a claim of sovereign immunity was sustained. In that case the claim was by the Italian ambassador, who appeared in the suit, and, on behalf of his government, set forth the public character of a vessel which had been taken under process of the United States District Court.

In Ex parte Muir, 254 U. S. 522, 532, 41 S. Ct. 185, 187 (65 L. Ed. 383) the Supreme Court points out the methods by which claims of sovereign immunity may be made:

"As of right the British Government was entitled to appear in the suit, to propound its claim to the vessel and to raise the jurisdictional question. The Sapphire, 11 Wall. 164, 167 [20 L. Ed. 127]; The Santissima Trinidad, 7 Wheat. 283, 353 [5 L. Ed. 454]; Colombia v. Cauca Co., 190 U. S. 524 [23

S. Ct. 704, 47 L. Ed. 1159]. Or, with its sanction, its accredited and recognized representative might have appeared and have taken the same steps in its interest. The Anne, 3 Wheat. 435, 445, 446 [4 L. Ed. 428]. And, if there was objection to appearing as a suitor in a foreign court, it was open to that government to make the asserted public status and immunity of the vessel the subject of diplomatic representations to the end that, if that claim was recognized by the Executive Department of this government, it might be set forth and supported in an appropriate suggestion to the court by the Attorney General, or some law officer acting under his direction. The Cassius, 2 Dall. 365 [Fed. Cas. No. 7,743]; The Exchange, 7 Cranch, 116 [3 L. Ed. 287]; s. c. 16 Fed. Cas. 85, No. 8,786; The Pizarro, 19 Fed. Cas. [786], No. 11,199; The Constitution, L. R. 4 P. D. 39; The Parlement Belge, L. R. 4 P. D. 129; s. c. L. R. 5 P. D. 197."

And in The Sao Vicente, 260 U. S. 151, 155, 43 S. Ct. 15, 16 (67 L. Ed. 179), in holding a foreign consul not to be clothed with authority to vindicate the prerogatives of the sovereign (of which immunity from suit is one), the following passage from the opinion of Mr. Justice Story in The Anne, 3 Wheat. 435, 445 (4 L. Ed. 428), is quoted with approval:

"And this brings us to the second question in the cause; and that is, whether it was competent for the Spanish consul, merely by virtue of his office, and without the special authority of his government, to interpose a claim in this case for the assertion of the violated rights of his sovereign? We are of opinion, that his office confers on him no such legal competency. A consul, though a public agent, is supposed to be clothed with authority only for commercial purposes. He has an undoubted right to interpose claims for the restitution of property belonging to the subjects of his own country; but he is not considered as a minister, or diplomatic agent of his sovereign, intrusted, by virtue of his office, with authority to represent him in his negotiations with foreign states, or to vindicate his prerogatives. There is no doubt, that his sovereign may specially intrust him with such authority; but in such case his diplomatic character is superadded to his ordinary powers, and ought to be recognized by the government within whose dominions he assumes to exercise it. There is no suggestion or proof of any such delegation of special authority in this case; and therefore, we consider this claim as asserted by an incompetent person, and on that ground, it ought to be dismissed."

In view of these decisions, I conclude that the consul of Denmark at San Francisco is not authorized, merely on account of his official status or his being named as defendant in the suit, to claim immunity from suit on behalf of the kingdom of Denmark, and that such claim can be recognized by me only when made in accordance with the decisions above cited.

The motion to dismiss, made on special appearance, will therefore be denied, with 30 days allowed to answer or further move.